UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cr-00113-JRS-DML |
| | ) | |
| TIONI BURNETT, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**Order on Motion to Suppress (ECF No. 66)**

Defendant Tioni Burnett moves to suppress all evidence derived from a warrantless entry into his residence on December 10, 2018. (*See* ECF No. 66.) The Government has responded to the motion. Burnett requested two extensions of time to reply, but the latest deadline of April 23, 2021, has elapsed without any word from Burnett or his counsel. Accordingly, the motion to suppress is ripe for ruling.

### I.  Background

In December of 2018, Burnett resided at 2933 North Boehning Street in Indianapolis (the "Property"). (Burnett Aff. ¶ 2, ECF No. 67-1.) Burnett says that, while he lived there, his sister Rreale McMahan would visit the Property two or three times a week, although McMahan "never once stayed the night." (*Id*. ¶ 5.)

For her part, McMahan was released on parole on August 14, 2018, after serving an executed sentence for a 2014 conviction. (Gibson Decl. ¶ 4, ECF No. 71-1.) To obtain parole, McMahan signed a document titled "Conditional Parole Release

1

Agreement" with the Indiana Department of Correction. (*Id*.) That document contains the following language:

> **[Condition] 9. HOME VISITATION AND SEARCH –**
> a) I will allow my supervising officer or other authorized officials of the Department of Correction to visit my residence and place of employment at any reasonable time.
> b) I understand that I am legally in the custody of the Department of Correction and that my person and residence or property under my control may be subject to reasonable search by my supervising officer or authorized official of the Department of Correction if the officer or official has reasonable cause to believe that the parolee is violating or is in imminent danger of violating a condition to remaining on parole.

(ECF No. 71-2.)

On December 10, 2018, Bryan Gibson was working as a parole officer with the Indiana Division of Parole Services. (Gibson Decl. ¶ 1, ECF No. 71-1.) McMahan had a scheduled meeting with her parole officer, Kristi Horton, that day. (*Id*. ¶ 4.) Gibson was assisting Horton with respect to McMahan. McMahan arrived, took a drug test, and tested positive for a controlled substance, contravening Condition 5 of the Conditional Parole Release Agreement. (*Id*. ¶ 5; ECF No. 71-2.) Parole Officer Horton asked McMahan about her place of residence. (Gibson Decl. ¶ 6, ECF No. 71-1.) McMahan said she stayed "often" at the Property, which she described as her brother's home. (*Id*.) The Property was not at an address approved by the Indiana Division of Parole Services, and it was not at the address appearing on the Conditional Parole Release Agreement. (*Id*.) Changing residences without requesting written permission violates Condition 2 of the Conditional Parole Release Agreement. (ECF No. 71-2.)

Having ascertained that McMahan had violated at least one and possibly two conditions of parole, the parole officers exercised their authority under Condition 9 to search McMahan's cell phone and key ring. (Gibson Decl. ¶ 7, ECF No. 71-1.) The key ring contained one key, which McMahan said was a key to her "grandmother's house." (*Id.*) GPS navigation software on McMahan's phone listed the Property as "Home." (*Id.*) An application on McMahan's phone also contained live security camera feeds at the Property. (*Id.*)

Suspicious that McMahan had violated Condition 2 by failing to disclose a new residential address to her parole officer, Parole Officers Gibson and Horton drove McMahan to the Property to conduct a home visitation and search. (*Id.* ¶ 8.) Parole Officer Gibson knocked on the door multiple times and said, "State Parole," but no one answered. (*Id.* ¶ 9.) He tried the key on McMahan's key ring on the door, and the door opened. (*Id.*) Immediately, he saw a handgun laying on a couch just inside the front door. (*Id.*) The parole officers handcuffed McMahan and then encountered Burnett running from a rear portion of the Property toward the opened front door. (*Id.*) Burnett had been asleep and the sound of the parole officers' entry awoke him. (Burnett Aff. ¶ 6, ECF No. 67-1.) The parole officers immediately detained Burnett and read him *Miranda* warnings. (Gibson Decl. ¶ 9, ECF No. 71-1.) They then conducted a "protective sweep" of the home, finding in plain view mail addressed to McMahan, plastic baggies, a large digital scale, and what appeared to be marijuana in at least one baggie. (*Id.* ¶ 10.)

After finding no one else in the Property, the parole officers called the Indianapolis Metropolitan Police Department, which secured a search warrant for the Property. (*Id.* ¶ 11.) A thorough search of the Property turned up, beyond the items already mentioned, more firearms, ammunition, more marijuana, cash, and other items often associated with drug trafficking. (*Id.* ¶ 13.)

## II. Discussion

According to Burnett, everything found at the Property was the fruit of an illegal entry into the Property, so everything must be suppressed under the exclusionary rule. *See, e.g., Gentry v. Sevier*, 597 F.3d 838, 850 (7th Cir. 2010) (evidence derived from illegal police conduct, i.e., fruit of the poisonous tree, should be suppressed). Thus, the only question before the Court is whether the parole officers' initial warrantless entry into the Property violated the Fourth Amendment.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. The Supreme Court often says that "searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (cleaned up). But there are many exceptions to the warrant requirement. One such exception concerns parolees. *See Samson v. California*, 547 U.S. 843, 857 (2006). In *Samson*, the Supreme Court considered California statutes that conferred on law enforcement officers the discretion to conduct warrantless and suspicionless searches of parolees. *Id.* Considering on the one hand the significantly diminished expectations of privacy enjoyed by parolees,

4

and on the other hand the "substantial" governmental interest in reducing recidivism among parolees, the Supreme Court held that warrantless and suspicionless searches of parolees did not contravene the Fourth Amendment. *Id.* at 850–56. Although *Samson* involved a search of a parolee's person, its reasoning applies equally to a search of a parolee's apparent home. *Cf. Griffin v. Wisconsin*, 483 U.S. 868, 879 (1987) (upholding warrantless searches of probationers' homes).[1]

Here, Condition 9 of the Conditional Parole Release Agreement permitted the parole officers to conduct a "reasonable" search of the Property if they had "reasonable cause" that McMahan had violated one or more conditions of parole. (ECF No. 71-2.) The parole officers had information that could lead a reasonable officer to believe that McMahan violated two conditions of probation as of December 10, 2018: Conditions 2 (failure to obtain advance permission for changing residences) and 5 (abuse of controlled substance). As to the former, the following facts led the parole officers to believe McMahan violated Condition 2: (1) An application on her phone listed the Property as "Home"; (2) Her phone had access to security footage at the Property; (3) McMahan said she "often" stayed at the Property; and (4) Her only key unlocked the front door of the Property. These facts were easily sufficient for a reasonable officer to conclude that McMahan violated Condition 2 and that the Property was a "residence or property under [McMahan's] control," (ECF No. 71-2), subject to search. Thus, the parole officers' entry into the

---

[1] On the "continuum" of state-imposed punishments, "parolees have fewer expectations of privacy than probationers." *Samson*, 547 U.S. at 850. Thus, although *Griffin* talks about probationers, its conclusion that a State's warrantless search of a probationer's property is not unreasonable applies to parolees, too.

Property was not unreasonable under Indiana's parolee-search procedure. And since Indiana confers on parolees more protections than the constitutional minimum—recall that *Samson* upheld a warrantless and suspicionless parolee-search procedure—it follows that the parole officers' actions did not violate any federal standards.

That is sufficient to decide the motion. Like the Supreme Court in *Samson*, *see* 547 U.S. at 852 n.3, the Court also declines to reach the issue of whether McMahan's agreement to her parole conditions also constituted consent to search the Property. *See United States v. Jackson*, 598 F.3d 340, 346 (7th Cir. 2010) (detailing the consent exception to the warrant requirement where a person has apparent authority to consent to a search).

### III. Conclusion

In sum, McMahan's parole agreement justified the Government's warrantless entry into the Residence, even if evidence of Burnett's criminal activity was later discovered incidentally. Since the initial entry was not legally deficient, and since the entry is all that Burnett challenges, nothing was seized from the Property in violation of the Fourth Amendment. Consequently, the motion to suppress, (ECF No. 66), is **denied**.

**SO ORDERED**.

Date: 4/28/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Harold Samuel Ansell
INDIANA FEDERAL COMMUNITY DEFENDERS
sam.ansell@fd.org

William Lance McCoskey
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
william.mccoskey@usdoj.gov

Jeremy A. Morris
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jeremy.morris@usdoj.gov